UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
TAFARI NICKLE,

                      Plaintiff,

                                     **MEMORANDUM & ORDER**
           v.                                  11-CV-3753 (MKB)

ASTRAMED PHYSICIAN, P.C.,

                      Defendant.
----------------------------------------------------------------x

MARGO K. BRODIE, United States District Judge:

      Plaintiff Tafari Nickle filed the above-captioned action against Defendant Astramed Physician P.C. ("Astramed") pursuant to the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") for unpaid overtime wages. Defendant brought a counterclaim for fraud, alleging that Plaintiff falsely reported his hours. Plaintiff moved for summary judgment and to dismiss Defendant's counterclaim for fraud. The Court heard argument on November 29, 2012. At the argument, the Court dismissed Defendant's fraud counterclaim on the record but reserved decision with regard to Plaintiff's motion for summary judgment. For the following reasons, Plaintiff's motion for summary judgment is denied.

    **I.    Background**

      Plaintiff was employed by Defendant from December of 2009 to July of 2011. (Pl. 56.1 ¶ 2; Def. 56.1 ¶ 3.) Defendant is a medical practice founded by Kevin Lowe. (Pl. 56.1 ¶ 3; Def. 56.1 ¶ 4.) Lowe is the sole shareholder and Chief Executive Officer of Defendant. (Pl. 56.1 ¶ 4; Def. 56.1 ¶ 5.) Plaintiff was an hourly employee who worked as a driver for Defendant. (Pl. 56.1 ¶ 9; Def. 56.1 ¶ 10; Pl. Decl. ¶¶ 6, 10.) Plaintiff was originally paid $11.50 an hour and, beginning in 2011, was paid $12.50 an hour. (Pl. Decl. ¶ 23.) Plaintiff was Defendant's only

driver. *Id.* at ¶ 7. At that time, Defendant operated six offices and had over 10,000 patients. *Id.* at ¶¶ 8–9. Plaintiff provided his driving services to all six offices. *Id.* at ¶ 10. According to Plaintiff, he worked Monday through Saturday. *Id.* at ¶ 11. He began his day around six in the morning when he drove to Defendant's sleep center, picked up patients that had spent the night at the center and transported them to their homes. *Id.* at ¶¶ 11–12. This task generally took two to three hours. *Id.* at ¶ 12. Plaintiff would then go to Defendant's main office at Dormans Road in Queens, New York. *Id.* at ¶¶ 8, 13. At the main office, Plaintiff would receive a list of patients, and he would pick the patients up from their homes and transport them to one or more of Defendant's offices. *Id.* at ¶ 13. Plaintiff would then transport the patients back to their homes. *Id.* At around 5:30 or 6:00 in the evening, Plaintiff would transport patients from their homes to Defendant's sleep center, where they would spend the night. *Id.* at ¶ 14. Plaintiff generally ended the work day around 8:00 p.m. *Id.* at ¶ 15. On Sundays, Defendant's offices were closed but Plaintiff was still required to transport sleep study patients in the morning and evening. *Id.* at ¶ 17.

In addition to driving patients, Plaintiff claims that he did a variety of handyman and other support service jobs: picking up and delivering blood and other testing materials from testing labs and taking them to various offices; picking up co-pay money from various offices and delivering the money to Lowe; performing handyman functions such as changing light bulbs; purchasing and delivering supplies; and other various errands. *Id.* at ¶ 16. Plaintiff claims that he was required to be available all day and was called throughout the day to perform various tasks. *Id.* at ¶ 17. Defendant claims that after Plaintiff picked up the sleep study patients in the morning, he was free to do whatever he wanted and did not have to wait at home for a phone call. (Declaration of Kevin Lowe ("Lowe Decl.") ¶¶ 7–8.) Lowe testified that Plaintiff's main

responsibility was to pick up people in the morning for the sleep study and drop them off in the evening, but he conceded that Plaintiff would sometimes pick up and deliver blood. (Deposition of Kevin Lowe ("Lowe Dep.") 21:17–19, 23:4–13.) Lowe testified that he had five drivers after Plaintiff, and the drivers all worked less than 20 hours per week. (Lowe Dep. 41:20–42:3.)

Plaintiff claims that every other Thursday, he would meet with Lowe. (Pl. Decl. ¶ 18.) Lowe would review the hours of each employee and sign the paycheck if he was satisfied with the hours. *Id.* Plaintiff would then transport the paychecks to Defendant's various offices. *Id.* Plaintiff claims that Lowe only signed Plaintiff's paycheck after reviewing both his hours and tasks. *Id.* at ¶ 19. Lowe claims that he knew that Plaintiff was reporting more hours than he had actually worked, but Lowe paid Plaintiff anyway. (Lowe Dep. 26:2–27:23.) In July of 2011, Plaintiff was terminated. (Lowe Dep. 12:20–21.)

## II. Discussion

### a. Standard of Review

Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Redd v. N.Y. Div. of Parole*, 678 F.3d 166, 173 (2d Cir. 2012). The role of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ.*, 444 F.3d 158, 162 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). A genuine issue of fact exists when there is sufficient "evidence on which the jury could reasonably find" for the non-movant. *Anderson*, 477 U.S. at 252. The "mere existence of a scintilla of evidence" is not sufficient to defeat summary judgment; "there must be evidence on which the jury could reasonably find for

the plaintiff." *Id.* The court's function is to decide "whether, after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party." *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir. 2000).

### b. Liability

"Both the FLSA and NYLL require that employers compensate employees who work over forty hours per week with overtime pay at the rate of one and one-half times the regular rate." *Wong v. Hunda Glass Corp.*, No. 09 Civ. 4402, 2010 WL 2541698, at *2 (S.D.N.Y. June 23, 2010); 29 U.S.C. § 207(a)(1); N.Y. Lab. Law. §§ 198(1)(a), 650; *see also Barfield v. N.Y.C. Health & Hospitals Corp.*, 537 F.3d 132, 140 (2d Cir. 2008). "'Employer' includes 'any person' other than a labor organization 'acting directly or indirectly in the interest of an employer in relation to an employee.'" *Barfield*, 537 F.3d at 140 (quoting 29 U.S.C. § 203(d)).

The only disputed issue in this action is whether Plaintiff worked in excess of forty hours a week. Plaintiff claims that he worked more than 40 hours a week. (Pl. 56.1 ¶ 10.) Moreover, Defendant's own payroll records demonstrate that Plaintiff was routinely paid for working in excess of 40 hours a week. (Declaration of Abdul Hassan ("Hassan Decl.") Ex. 5.) However, Plaintiff was paid at his regular rate and did not receive time and a half.[1] (Hassan Decl. Ex. 5; Pl. 56.1 ¶¶ 10–11; Def. 56.1 ¶ 11.) Defendant alleges that, even though it paid Plaintiff for all of his reported hours, Plaintiff did not actually work the hours he reported. (Lowe Dep. 26:2–10.) Lowe claims that he still paid Plaintiff for those hours because (1) Plaintiff was "hired as a friendly gesture" to Plaintiff's cousin, who worked for Defendant, and (2) Plaintiff was a "lost

---

[1] Lowe conceded in his deposition that he had employees that worked over 40 hours but were not paid time and a half. (Lowe Dep. 29:9–14.) Lowe claimed that his employees knew that he could not afford to pay time and a half, and, if they chose to work overtime, they would only be paid at their regular rate. (Lowe Dep. 29:17–30:5.)

4

soul" who had been in and out of trouble with the police. (Lowe Dep. 26:2–27:23.) Lowe testified that every time he saw Plaintiff, he would tell Plaintiff, "you know this is not real, you know this is not true" with regard to Plaintiff's hours. (Lowe Dep. 28:5–7.) Although the parties have markedly different accounts of Plaintiff's job responsibilities and the hours he worked, the central dispute is whether Plaintiff was entitled to compensation for the time he spent waiting in between his morning and evening sleep center driving duties.

"The FLSA does not define 'work,' but the Supreme Court has interpreted [the] word to mean 'physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business.'" *Clarke v. City of New York*, No. 06 Civ. 11397, 2008 WL 3398474, at *3 (S.D.N.Y. June 16, 2008) (quoting *Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 598 (1944)). "Time that an employee spends waiting for work assignments is compensable if the waiting time is spent 'primarily for the benefit of the employer and his business.'" *Moon v. Kwon*, 248 F. Supp. 2d 201, 229 (S.D.N.Y. 2002) (quoting *Owens v. Local No. 169, Ass'n of W. Pulp & Paper Workers*, 971 F.2d 347, 350 (9th Cir. 1992)); *see also Yu G. Ke v. Saigon Grill, Inc.*, 595 F. Supp. 2d 240, 255–56 (S.D.N.Y. 2008) ("As a legal matter, an employer must pay his employees for waiting time between tasks if the employees are expected to be ready whenever performance is required."). "[W]hen periods of inactivity are 'unpredictable . . . [and] usually of short duration,' and the employee 'is unable to use the time effectively for his own purposes,' then the employee is 'engaged to wait,' and the inactive time constitutes 'work' time under FLSA — even if 'the employee is allowed to leave the premises or the job site during such periods of inactivity.'" *Moon*, 248 F. Supp. 2d at 229 (quoting 29 C.F.R. § 785.15).

5

Conversely, "[p]eriods during which an employee is completely relieved from duty and which are long enough to enable him to use the time effectively for his own purposes are not hours worked." *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 360 (2d Cir. 2011) (citing 29 C.F.R. § 785.16(a)); *see also Jiao v. Shi Ya Chen*, No. 03 Civ. 165, 2007 WL 4944767, at *12 (S.D.N.Y. Mar. 30, 2007) (noting that the analysis of the plaintiff's compensable hours at night is different because "he presumably had longer periods of time between tasks than he did during the day, and he could use that time for pursuing private interests or for sleeping"). When an employee "is not required to remain on the employer's premises but is merely required to leave word at his home or with company officials where he may be reached," the employee is merely "waiting to be engaged" and is not working under the FLSA. 29 C.F.R. § 785.17. Ultimately, whether waiting time is time worked under the FLSA is dependent on whether the "employee was engaged to wait or . . . [the employee] waited to be engaged." 29 C.F.R. § 785.14 (citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 137 (1944)).

Plaintiff claims that he was "required by defendant to be available all day" and was "called upon throughout the day to perform numerous tasks" for Defendant. (Pl. Decl. ¶ 17.) However, Lowe testified that Plaintiff's main responsibility was transporting sleep study patients in the morning and the evening. (Lowe Dep. 23:6–13.) In between driving the sleep study patients, Lowe claims that Plaintiff was free to go home and was relieved of any duties until the evening. (Lowe Decl. ¶¶ 7–8.) Lowe states that Plaintiff was not required to report to the main office and, in fact, did not have a desk or a station at any of the offices. *Id.* A reasonable jury could find, based on Lowe's testimony, that Plaintiff was "completely relieved from duty" during the day and that the hours waiting were not hours worked. *Kuebel*, 643 F.3d at 360. Accordingly, the Court finds a genuine issue of fact exists regarding whether Plaintiff was

6

entitled to compensation for the time he spent waiting in between assignments. Plaintiff's motion for summary judgment is denied.

## III. Conclusion

For the reasons set forth above, Plaintiff's motion for summary judgment is denied. The parties are directed to file a joint pre-trial order within thirty (30) days of this Order.

SO ORDERED.

     s/MKB
MARGO K. BRODIE
United States District Judge

Dated: February 28, 2013
      Brooklyn, New York